**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ACCLIVITY ANCILLARY SERVICES LLC,[1] et. al., | ) | Case No. 24-90001 (MI) |
|  | ) |  |
|  | ) | Jointly administered. |
| Debtors. | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |

**OPPOSITION TO ACCLIVITY WEST LLC'S MOTION FOR SUMMARY JUDGMENT ON ITS OBJECTIONS TO CLAIM NOS. 16 FILED BY KELLY WOO, 17 FILED BY ALEKSANDER DYO, 18 FILED BY PROFECTUS WEALTH MANAGEMENT CO. AND 20 FILED BY PROFECTUS FINANCIAL & INSURANCE SERVICES, INC .**

Creditors Kelly Woo ("Woo"), Aleksander Dyo ("Dyo"), Profectus Wealth Management Co. ("PWM") and Profectus Financial & Insurance Services, Inc. ("PFI" and collectively with Woo, Dyo, and Profectus Wealth, "Claimants") hereby submit their Opposition ("Opposition") to Acclivity West LLC's ("Acclivity West" or "Debtor") Motion for Summary Judgment on Its Objections to Claims Nos. 16 Filed by Kelly Woo, 17 Filed by Aleksander Dyo, 18 Filed by Profectus Wealth Management Co, and 20 Filed by Profectus Financial & Insurance Services, Inc. [Docket No. 222] (the "MSJ").

///

///

///

---

[1] The debtors and debtors in possession these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Acclivity West (7677) and Acclivity Ancillary Services LLC ("AAS") (0786). The debtors' mailing address is: 11200 Broadway Street, Suite 2705, Pearland, Texas 77584.

1

**SUMMARY OF ARGUMENT**

1.        Summary judgment is not appropriate given the multiple factual and legal disputes at issue.  First, Debtor heavily relies upon Section 502(e) to support disallowance of the Claims.[2] Despite the pages of analysis that Debtor devotes to its Section 502(e) argument, Debtor fails to establish how legal fees incurred and/or paid exclusively by Claimants can ever be a co-liability. Additionally, the MSJ fails to provide persuasive argument or authority supporting that Claimants' payment of legal fees is somehow a "contingent" claim for purposes of Section 502(e).  Further, the MSJ fails to connect the dots as to how Debtor can ever be co-liable to the plaintiff in the Huh Lawsuit when Debtor is no longer a named defendant in that action.  In sum, Section 502(e) does not bar Claimants' right to equitable indemnification resulting from Debtor's wrongdoing, improper actions and inactions.

2.        Further, the MSJ asserts that no material issue of disputed fact exists regarding the applicability of collateral estoppel / issue preclusion.  Nothing could be further from the truth.  It is undisputed that Claimants were not parties to the Sedlar-Sholty Lawsuit – which is the lawsuit Debtor asserts bars the entirety of the Claims filed by Claimants.  Despite Claimants not being parties to the Sedlar-Sholty Lawsuit, Debtor argues that Claimants are bound by the judgment in that action due to "privity" with the plaintiffs.  Debtor's sole argument for privity is the admitted fact that PFI funded plaintiffs' legal fees in the Sedlar-Sholty Lawsuit.

3.        While Debtor asserts that funding of legal fees, alone, constitutes requisite "control" to find one in privity with parties to a lawsuit, applicable California law provides otherwise.  In particular, California authorities provide that a finding of "privity" requires one to

---

[2] All capitalized terms not defined in this Summary of Argument shall have the meaning ascribed to same below.

have a proprietary or financial interest in <u>and</u> control of, a prior action.  The MSJ provides no argument, analysis, or evidence supporting that Claimants had a proprietary or financial interest in the Sedlar-Sholty Lawsuit.  To the contrary, the evidence in opposition to the MSJ expressly provides that Claimants did not have a proprietary or financial interest in the Sedlar-Sholty Lawsuit.  Further, California authorities make clear that a finding of "control" over litigation is factually intensive and based upon the circumstances of the case.  Given that plaintiffs in the Sedlar-Sholty Lawsuit separately retained an attorney to prosecute the action, Claimants were merely the financer of same.  As evidenced by the declarations in support of this opposition, Claimants did not direct the litigation strategy of the Sedlar-Sholty Lawsuit – and as such, did not control that action.  Lastly, Debtor fails to provide any legal basis for finding that Woo, Dyo, or PWM controlled the Sedlar-Sholty Lawsuit when only PFI funded plaintiffs' legal expenses.

4. For these reasons, and as discussed in detail below, the MSJ must be denied in its entirety.  Alternatively, adjudication of Claimants' right to equitable indemnification in a summary fashion is inappropriate and inefficient given pending adversary actions that have recently been transferred to this Court.  The adversary actions should be adjudicated, and perhaps consolidated with the MSJ and Claim Objections so all inextricably intertwined claims asserted by all parties can be concurrently adjudicated.

## RELEVANT FACTUAL BACKGROUND

**Debtors' Background**

5. Acclivity West was founded in 2009 to offer and sell life settlement interests (the "<u>Life Settlement Policies</u>") to qualified investors.

6. From 2009 to 2018, Acclivity West claims to have purchased approximately forty-five (45) life insurance policies with an aggregate death benefit face value of approximately

$125,000,000.  Acclivity West claims to have offered and sold interests in these forty-five (45) policies to more than 1,000 investors, all of whom are California residents.

7.      Acclivity West's headquarters, and all of its business and operations, have always been marketed from and located in Irvine, California.

**Bankruptcy Filing**

8.      In June 2023, AAS was formed as a wholly owned subsidiary of Acclivity West. AAS has a mailing address in Texas.  Debtor state that AAS was formed "to provide administrative and investor relations services for AW's approximately 1,000 investors (the "Creditor-Investors") before, during and after the chapter 11 cases and confirmation of the Plan."  *See*, First Day Declaration at ¶ 11.

9.      Just six (6) months after forming AAS in Texas, on January 5, 2024, Debtor filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Southern District of Texas, Houston Division.

10.      On January 5, 2024, the Court entered an order [Docket No. 23] for joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

11.      On January 25, 2024, the United States Trustee for the Southern District of Texas appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [Docket No. 107].

**Relationship Between Acclivity West and Claimants**

12.      Claimants are financial services professionals who were once sales representatives of Acclivity West engaged to sell fractionalized interests in the Life Settlement Policies that were sold by Acclivity West, as discussed above.  They began working with Acclivity West pursuant to

separate Sales Representative Agreements (the "Agreement") in early 2017.  A copy of the Agreement is affixed to the MSJ within Exhibits 1 through 4.

13.     At Section 5, the Agreement contains certain indemnity rights of Acclivity West, saying specifically:

> SECTION 5.1. Indemnification by the Sales Representative. The Sales Representative shall indemnify, defend and hold harmless Acclivity West, its Affiliates, their respective shareholders, members, managers, agents, employees, attorneys, accountants, representatives and their respective heirs, successors and permitted assigns, each in their capacity as such (each, an "Acclivity West Indemnified Person") from, against and in respect of any damages, losses, diminution in value, charges, obligations, liabilities, claims, demands, actions, suits, proceedings, payments, judgments, settlements, assessments, deficiencies, taxes, loss of current or future tax benefits, fines, interest, penalties and costs and expenses (including reasonable fees and expenses of attorneys) (collectively, "Losses") imposed on, sustained, incurred or suffered by any Acclivity West Indemnified Person directly or indirectly relating to, arising out of or resulting from (a) any breach of or inaccuracy in any representation or warranty made by the Sales Representative contained in this Agreement, (b) any breach, violation or non-fulfillment of any covenant or agreement of the Sales Representative contained in this Agreement, (c) any violation of Applicable Law by the Sales Representative, or (d) gross negligence, fraud or willful misconduct by the Sales Representative.

14.     At all relevant times herein, Woo and Dyo were and are the principals of PWM and PFI, which are financial advisory firms.

**The Mohr Lawsuit**

15.     On or about September 7, 2021, Woo, Dyo and others filed a complaint against Acclivity West in a lawsuit styled as *Ben Mohr, et. al. v. Acclivity West, LLC*, in the Superior Court of California, County of Los Angeles, as Case No. 21STCV32992 (the "Mohr Lawsuit").

16.     On July 15, 2022, Acclivity West filed a Cross-Complaint against Mohr in the Mohr Lawsuit.

17.     On June 23, 2023, Acclivity West filed an Amended Cross-Complaint naming Woo, Dyo and others as cross-defendants.

18.     On February 9, 2024, Acclivity West removed the Mohr Lawsuit to the United States Bankruptcy Court for the Central District of California, commencing Adversary Case No. 24-ap-01036-VZ (the "Mohr Adversary Proceeding").

19.     On March 1, 2024, Acclivity West filed a Motion to Transfer Venue to the United States Bankruptcy Court for the Southern District of Texas (the "Mohr Venue Motion") in the Mohr Adversary Proceeding.   The Mohr Venue Motion was granted and as such, the Mohr Adversary Proceeding will be transferred to this Court.

**The Huh Lawsuit**

20.     On or about January 24, 2023, John Huh sued PFI, Acclivity West, and others in a lawsuit styled as *John Huh vs. Acclivity West, LLC*, et al. in the Superior Court of California, County of Los Angeles as Case No. 21STCV01566 (the "Huh Lawsuit"). The Mohr Lawsuit and the Huh Lawsuit will be collectively referred to herein as the "Lawsuits."

21.     In the Huh Lawsuit, the plaintiffs asserted claims for breach of contract, breach of fiduciary duty, negligence, and negligent and intentional misrepresentation.

22.     On March 28, 2023, Acclivity West filed a First Amended Cross-Complaint in the Huh Lawsuit against Woo and Dyo. Claimants intend to file a cross-complaint against Acclivity West in the Huh Lawsuit.

23.     On June 30, 2023, the state court in the Huh Lawsuit granted Acclivity West's demurrer without leave to amend, dismissed plaintiff's claims against Acclivity West and thus, Acclivity West is no longer a defendant in the Huh Lawsuit.

24.     On February 7, 2024, Acclivity West removed the Huh Lawsuit to the United States Bankruptcy Court for the Central District of California, commencing Adversary Case No. 24-ap-01028-VZ (the "Huh Adversary Proceeding").[3]

25.     On March 1, 2024, Acclivity West filed a Motion to Transfer Venue to the United States Bankruptcy Court for the Southern District of Texas (the "Huh Venue Motion").  The Huh Venue Motion was granted and as such, the Huh Adversary Proceeding will be transferred to this Court.

26.     Claimants have incurred attorneys' fees and costs, and sustained additional damages, as a result of the Lawsuits.  Claimants allege that if they are found to be liable under any of the Lawsuits, such liability is solely the result of the negligence, acts, omissions, breach of contract, or other fault of Acclivity West, and that such conduct proximately caused any harm or damages found to have occurred.  As such, Claimants allege they are entitled to full and complete indemnification and contribution from Acclivity West.

27.     Debtor has filed cross-complaints against Claimants and others in the Lawsuits as noted above.  Pursuant to such cross-complaints, Debtor asserts indemnity and other claims against Claimants, asserting damages of over $2 million.

**Proofs of Claim Filed By Claimants**

28.     Claimants were not scheduled as creditors of Debtor's estates and were not served with a notice of the claims bar date of the Cases.  Nevertheless, Claimants timely filed separate proofs of claim after learning of the bankruptcy cases from some of their clients.

---

[3] The Mohr Adversary Proceeding and the Huh Adversary Proceeding, shall hereinafter be collectively referred to as the "Adversary Actions."

29.     On February 16, 2024, Claimants each timely filed separate proofs of claim asserting liabilities and indemnity rights arising out of Claimants' relationship with Acclivity West and which arise out of or are related to Lawsuits described above.[4]

30.     Specifically, Claimants filed the following proofs of claim (collectively, the "Claims"):

(a) Woo filed a proof of claim asserting a general unsecured claim in the amount of $1,215,128.86 [Claim No. 16] broken down as follows: (1) attorneys' fees and costs incurred in the Mohr Lawsuit of $15,754.86; (2) settlement demand from plaintiffs in the Huh Lawsuit in the amount of $1,199,374.00; and (3) additional damages and future fees and costs.

(b) Dyo filed a proof of claim asserting a general unsecured claim in the amount of $1,215,234.35 [Claim No. 17] broken down as follows: (1) attorneys' fees and costs incurred in the Mohr Lawsuit of $15,754.86; (2) settlement demand from plaintiffs in the Huh Lawsuit of $1,199,374.00; and (3) additional damages and future fees and costs.

(c) PWM filed a proof of claim asserting a general unsecured claim in the amount of $1,211,161.81 [Claim No. 18] broken down as follows: (1) legal costs related to the Huh Lawsuit of $11,787.81; (2) settlement demand from plaintiffs in the Huh Action of $1,199,374.00; and (3) additional damages and future fees and costs.

(d) PFI filed a proof of claim asserting a general unsecured claim in the amount of $2,841,938.09 [Claim No. 20] broken down as follows: (1) legal costs related to Huh Lawsuit of $40,007.55; (2) settlement demand made by plaintiff in the Huh Lawsuit of $1,199,374.00; (3)

---

[4] Pursuant to the Order (I) Allowing Creditor-Investor Claims For All Purposes of These Chapter 11 Cases, (II) Setting Bar Date For Filing Proofs of Claim and (III) Granting Related Relief [Docket No. 98], the bar date for filing non-governmental proofs of claim was February 19, 2024 (the "Claims Bar Date").

legal costs paid on behalf of clients related to Sedler-Sholty Action of $102,556.54 (plus future legal costs, amount unknown/ongoing); (4) lost revenue due to Huh Action and Sedler-Sholty Action from 2021-2023 of at least $1,500,000; and (5) additional damages.

31.     Claimants will continue to accrue legal fees and costs in the Lawsuits to defend themselves, which will be added to the Claims.  As of the date of the filing of this Opposition, the total defense fees and costs incurred total: (a) $38,549.71 for Woo and Dyo; (b) $11,503.00 for PWM; and (c) $43,615.05 for PFI related to the Huh Lawsuit.

32.     Attached hereto as Exhibit B are invoices evidencing the legal fees and costs incurred by Claimants as of the date of the filing of this Opposition.

33.     On February 26, 2024, Acclivity West filed objections to each of the Claims [Docket Nos. 154-157] and on March 12, 2024, filed supplemental objections ("Supplemental Objections") to each of the Claims [Docket Nos. 208-211] (all collectively, the "Claim Objections").

34.     Then, on March 21, 2024, Acclivity West filed the MSJ seeking disallowance of the Claims.

35.     The Claimants filed an Omnibus Response to the Claim Objections [Docket No. 243] on March 27, 2024.

36.     In the Claim Objections and in the MSJ, Acclivity West generally denies that it owes Claimants any money under any theory of equitable indemnity, contribution, or apportionment of responsibility, asserts certain affirmative claims, and asserts the Claims should be disallowed under Section 502(e).

///

///

9

## MEMORANDUM OF POINTS AND AUTHORITIES

### Relevant Legal Authority for Summary Judgment

37.      Pursuant to Federal Rule of Civil Procedure 56(a) and Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only if the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one 'that might affect the outcome of the suit under governing law,' and a fact issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.,* 901 F.3d 605, 611 (5th Cir. 2018) (citations omitted).

38.      The moving party "bears the initial burden of articulating the basis for its motion and identifying evidence which shows that there is no genuine issue of material fact." *In re Enron Corp.,* 319 B.R. 128, 130 (Bankr. S.D. Tex. 2004) citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); see also Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). If the moving party fails to meet its initial burden, "the motion must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (citation omitted). Only when the moving party satisfies its initial burden must the nonmoving party show the existence of a genuine issue of material fact. *Id*.

39.      In evaluating the evidence, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party" and resolve factual disputes in that party's favor. *Antoine v. First Student, Inc*., 713 F.3d 824, 830 (5th Cir. 2013) (citations

omitted). "[A]ll justifiable inferences will be drawn in the non-movant's favor." *Envtl. Conservation Org. v. City of Dall.,* 529 F.3d 519, 524 (5th Cir. 2008). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

**Relevant Legal Authority for Allowance of Claim**

40.    11 U.S.C. § 502(a) provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects." 11 U.S.C. § 502(b) provides, in relevant part, that "if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition." (emphasis added).

41.    As this Court is well aware, the burden of proof with respect to a claim objection is a shifting one. Pursuant to Bankruptcy Rule 3001(f), "a proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. Proc. 3001(f). If a claim is entitled to the prima facie validity set forth by Rule 3001(f), a party objecting to a claim must present affirmative evidence to overcome the presumptive validity of a properly filed proof of claim. See *In re Allegheny International, Inc.,* 954 F.2d 167 (3rd Cir. 1992). If, however, evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to 'prove the validity of the claim by a preponderance of the evidence. *In re Fidelity Holding Co., Ltd.,* 837 F.2d 696, 698 (5th Cir. 1988) (emphasis added). If the objecting party provides evidence to rebut the prima facie validity of the claim, the ultimate burden of proof is shifted back to the claimant. *Id*; See also *In re Murguillo*, 176 B.R. 524, 529 (B.A.P. 9th Cir. 1994); *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991).

11

**Claimants Have Valid Claims For Equitable Indemnity**

42. Despite Debtor's unsupported general denial of liability under any theory, equitable indemnity and contribution are well established in California (which is the law to be applied pursuant to the clear terms of the Agreement). Where a contract states the circumstances that party A is to entitled to seek indemnification from party B, but is silent on when that party B is entitled to obtain indemnification from party A, equitable indemnity comes into play. *Maryland Casualty Co. v. Bailey & Sons, Inc.*, 35 Cal. App. 4th 856, 874 (1995). When parties by express contractual provision establish a duty by one party to indemnify another, the extent of that duty must be determined from the contract and not from the doctrine of equitable indemnity. When, however, the duty established by contract is by the terms and conditions of its creation inapplicable to the particular factual setting before the court, the principles of equitable indemnity may come into play. *E. L. White, Inc. v. Huntington Beach*, 21 Cal. 3d 497, 508 (1978).

43. Another purpose of the equitable indemnity doctrine is to apportion losses among tortfeasors in proportion to their relative culpability. *Expressions at Rancho Niguel Assn. v. Ahmanson Developments, Inc.*, 86 Cal.App.4th 1135, 1142 (2001). Equitable indemnity in this context is premised on a joint legal obligation to another for damages and is subject to allocation of fault principles and comparative equitable apportionment of loss. *C.W. Howe Partners, Inc. v. Mooradian*, 43 Cal.App.5th 688, 700 (2019).

44. Equitable indemnity: (1) requires no contractual relationship; (2) is premised on a joint legal obligation to another for damages; and (3) is subject to allocation of fault principles and comparative equitable apportionment of loss. *C.W. Howe Partners, Inc. v. Mooradian*, 43 Cal.App.5th 688, 700 (2019). The elements for a cause of action for equitable indemnity are: (1)

a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is equitably responsible. *Id.*

45.     Here, there is no dispute that the Agreement contains an indemnity clause in favor of Acclivity West but is silent as to indemnity in favor of Claimants.  There is also no dispute that each of the Lawsuits arise from Claimants' relationships with, and are premised upon, the negligence, acts, omissions, breach of contract, or other fault of Acclivity West, which such conduct proximately caused any harm or Claimants for its proportion of its culpability.

46.     However, there exists a factual dispute as to whether any damages suffered by the Creditor-Investors were caused by the actions of Acclivity West and specifically, the product it sold, or by the actions of the Claimants.  This is a factual issue that requires additional fact-finding, a fulsome trial, and an adjudication of the underlying Adversary Actions.  As such, the MSJ must be denied.

47.     Further, despite Debtor's contention that its liability is precluded by the Lawsuits, a defendant's equitable indemnity action against the proposed indemnitor is separate and distinct from the underlying action as a claim for equitable indemnity does not come into existence until the indemnitee has suffered loss through payment. *Crouse v. Brobeck, Phleger, & Harrison*, 67 Cal. App. 4th 1509, 1541-1543 (1998).

48.     Based on this well-established authority under applicable and governing California law, it is clear that equitable indemnity applies, subject to the factual determination of liability which is being litigated in the Adversary Actions.  Based thereon, the MSJ must be denied.

///

///

///

13

**Section 502(e)(1)(B) Is Not Applicable to Indemnity Related to Attorney Fees Incurred by Claimants or a Prospective Judgment in the Huh Lawsuit**

49.     Debtor argues the Claims must be disallowed pursuant to Section 502(e)(1)(B) which provides that the Court "shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor . . . to the extent that . . . such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution . . . ." 11 U.S.C. § 502(e)(1)(B). In other words, for a claim to be disallowed under Section 502(e)(1)(B) of the Bankruptcy Code, three elements must be met: (i) the party asserting the claim must be liable with the debtor on the claim of a third party; (ii) the claim must be contingent at the time of its allowance or disallowance; and (iii) the claim must be for reimbursement or contribution." *In re Hal Luftig Co.*, 655 B.R. 508, 550 (Bankr. S.D.N.Y 2023) <u>citing</u> *In re Lyondell Chemical Co.*, 442 B.R. 236, 243 (Bankr. S.D.N.Y. 2011).

50.     "Section 502(e) is not a means of immunizing debtors from contingent liability, but instead protects debtors from multiple liability on contingent debts … Thus, the Pennsylvania District Court ruled that § 502(e)(1)(B) does not apply to "direct" contingent claims. *In re Tri-Union Dev. Corp.*, 314 B.R. 611, 617 (Bankr. S.D. Tx. 2004)(internal citations omitted).

51.     "To be sure, the legislative history concerning § 502(e) indicates that a principal purpose of the entire subsection is to prevent a double payment by the estate." *In re Wedtech Corp.,* 85 B.R. 285, 289 (Bankr. S.D.N.Y. 1988) (citing "Subsection (e) . . . . requires disallowance of the claim for reimbursement or contribution of a co-debtor, surety or guarantor of an obligation of the debtor, unless the claim of the creditor on such obligation has been paid in full. The provision prevents competition between a creditor and his guarantor for the limited proceeds in the estate."

14

H. R. Rep. No. 95-595, 95th Cong., 1st Sess. 354 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. 65 (1978), reprinted in 1978 U.S. Code Cong. & Ad. News 5851, 6310."

52.     Here, Claimants do not dispute that Acclivity West is not a party to the Huh Lawsuit and as such, there can be no concern that the Estate will be doubly liable for any damages determined in the Huh Lawsuit.  As such, under the clear purpose of Section 502(e), it does not apply to the facts at issue here.

53.     Putting aside the true purpose behind Section 502(e) and instead, simply looking at the elements of Section 502(e)(1)(B), there is no dispute that the prospective judgment obtained by plaintiff in the Huh Lawsuit is contingent.  However, Debtor is not a named defendant in that action, and as such, if Claimants are owed indemnification for this judgment it would be a direct claim against Debtor (*i.e.* not a co-liability of Debtor).  Notwithstanding the contingent nature of the prospective judgment in the Huh Lawsuit, Claimants legal fees incurred and paid in the Huh Lawsuit and the Mohr Lawsuit are not contingent.

54.     "A claim is 'contingent' when 'it has not yet accrued and . . . is [instead] dependent upon some future event . . . .' *In re Hal Luftig Co*., 655 B.R. 508, 551 (Bankr. S.D.N.Y. 2023) citing In re GCO, LLC, 324 B.R. 459, 466 (Bankr.S.D.N.Y.2005); see also *In re Chase*, 372 B.R. 125, 132 (Bankr.S.D.N.Y.2007) (noting that "[t]he Bankruptcy Code does not define the term 'contingent' but the court has stated that a claim is 'contingent' when the debtor's legal duty to pay it does not come into existence until triggered by the occurrence of a future event"). "Mr. Luftig's Indemnification Claim is not 'dependent upon some future event that may never happen,' but is instead the result of past expenses that have already been incurred." *Id*.

55.     With respect to whether to Section 502(e)(1)(B) applies to defense costs, there appears to exist a split of authority as to whether there is co-liability for a claim for reimbursement

of costs the claimant incurred to defend against the underlying lawsuit, no co-liability exists and therefore such claim falls outside the scope of 502(e).  *Compare, In re Vectrix Bus. Solutions, Inc*., 2005 Bankr. LEXIS 1712 (Bankr. N.D. Tex. Sept. 1, 2005) (distinguishing between indemnification for liability and for defense costs); *In re Chemtura Corp*., 436 B.R. 286, 296 (Bankr. S.D.N.Y. 2010); and *In re RNI Wind Down*, 369 B.R. 174, 181 (Bankr. D. Del. 2007) (finding there is no co-liability and thus, Section 502(e)(1)(B) is not applicable), with *In re Drexel In re Drexel Burnham Lambert Group, Inc.,* 146 B.R. 92, 97 (Bankr. S.D.N.Y. 1992) (finding there is co-liability).

56.    The only case cited by either party in Texas, namely *In re Vectrix Bus. Solutions, Inc*., 2005 Bankr. LEXIS 1712, uses the more literal and narrow approach to reading Section 502(e)(1)(B) and finds there is no co-liability for defense costs. S*ee In re Vectrix Bus. Solutions, Inc*., 2005 Bankr. LEXIS at *10 ("But Lynd only seeks an indemnification claim for his attorney's fees incurred in defending the lawsuit. Vectrix would not be co-liable with Lynd to the Ferrer plaintiffs for Lynd's attorney's fees in the Ferrer suit. Vectrix would only be co-liable for Lynd's liability to the Ferrer plaintiffs on the merits of their securities law claim. Lynd's indemnification claim for attorney's fees is therefore not subject to § 502(e)(1)(B).")  Accordingly, Claimants urge this Court to follow *Vectrix* to find there is not co-liability for defense costs incurred by Claimants.

57.    Specifically, Claimants did not voluntarily file the Lawsuits but rather, were forced into the Lawsuits and forced to defend themselves, requiring them to expend legal fees and costs in the Lawsuits.  Regardless of whether Debtor is ultimately found liable, Claimants were required to incur defense fees and costs for which only Claimants are liable.  As a result of these liabilities incurred by Claimants flowing from Debtor's wrongdoing, Claimants are entitled to equitable indemnification.  Debtor's liability is to Claimants, and Claimants only.  The Claims and the

16

equitable indemnification sought therein is clearly not a co-liability. Accordingly, Debtor and Claimants are not co-liable for the attorneys' fees and costs incurred by Claimants in the Lawsuits and thus, Section 502(e) is not applicable. Therefore, summary judgment is not appropriate and Debtor's motion should be denied in its entirety.

**Collateral Estoppel Neither Applies to the Claims Nor Supports Summary Judgment**

58.     Debtor further argues that collateral estoppel / issue preclusion allegedly supports summary judgment disallowing the Claims. Debtor's position that the Claims are barred by collateral estoppel fairs no better than its misguided Section 502(e) argument.

59.     Under California law, collateral estoppel/issue preclusion bars re-litigation of issues earlier decided when all of the following tests are met: (1) the issue sought to be precluded from re-litigation must be identical to that decided in a former proceeding, (2) this issue must have been actually litigated in the former proceeding, (3) the issue must have been necessarily decided in the former proceeding, (4) the decision in the former proceeding must be final and on the merits, and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. *People v. Strong*, 13 Cal. 5th 698 (2022); *People v. Curiel*, 15 Cal. 5th 433 (2023).

60.     While Claimants agree that the judgment entered in the Sedlar-Sholty Lawsuit is a final decision, none of the other elements of collateral estoppel / issue preclusion are applicable to the Claims.

1.     The Issue Sought to be Precluded Is Not Identical to that Decided, and was Not Necessarily Decided, in the Sedlar-Sholty Lawsuit

61.     As discussed in detail below, Claimants were neither parties to the Sedlar-Sholty Lawsuit nor in privity with plaintiffs in that action. Putting this dispositive issue aside for the sake

17

of argument only, the issues decided in the Sedlar-Sholty Lawsuit are not identical to those underlying the Claims.  In particular, Claimants seek indemnification for: (1) legal fees incurred and paid connection with defense in the Huh Lawsuit, including defense of Debtor's Cross Complaint filed therein; (2) legal fees that will be incurred and paid connection with defense in the Huh Lawsuit, including Debtor's Cross Complaint filed therein; (3) a prospective judgment in favor of plaintiff in the Huh Lawsuit resulting from Debtor's wrongdoing; (4) legal fees incurred and paid connection with the Mohr Lawsuit, including defense of Debtor's Cross Complaint filed therein; and (5) legal fees that will be incurred in and paid connection with the Mohr Lawsuit, including Debtor's Cross Complaint filed therein.

62.     The issues attendant to the indemnification owed to Claimants were not adjudicated in the Sedlar-Sholty Lawsuit.  Furthermore, new issues and facts have come to light since the adjudication of the Sedlar-Sholty Lawsuit that support Claimants' right to indemnification – namely: (a) confirmation that AW experienced a "shortfall of money" but Debtor's professionals have not even investigated whether this shortfall was the result of money being stolen [Exhibit 7; 66:20 through 67:23]; and (b) acknowledgement that "AW company records were lost or destroyed prior to the current management team taking on operational controls. No documents exist to describe reasons for AW's 2020 financial crisis." [Second Amended Plan and Disclosure Statement, Dkt. No. 86 at pg. 20, Section II.C]. The admitted shortfall of funds and spoliation of evidence was not the result of Claimants' actions.  Rather, the admitted shortfall and spoiliation of evidence was the result of AW's actions, inactions, and/or wrongdoing – which may include fraud, theft, embezzlement, or misappropriation of funds.  In addition to indemnification not being adjudicated in the Sedlar-Sholty Lawsuit, facts, issues and claims for relief related to Debtor's fraud, theft, or misappropriation of funds were not asserted or adjudicated in the Sedlar-Sholty

18

Lawsuit.  Therefore, the issues associated with Claimants' right to indemnification are not identical to the issues in the Sedlar-Sholty Lawsuit and were not necessarily decided therein.

2. <u>Indemnification, Spoliation, Theft, Fraud, Embezzlement, or Misappropriation of Funds Were Not Actually Litigated in the Sedlar-Sholty Lawsuit</u>

63. Due to the fact that allegation of facts supporting indemnification, spoliation, theft, fraud, embezzlement and misappropriation of funds were made in the Sedlar-Sholty Lawsuit, it is axiomatic that these issues were not actually litigated.[5]

3. <u>Claimants Were Neither Parties to the Sedlar-Sholty Lawsuit Nor in Privity with Plaintiffs in the Sedlar-Sholty Lawsuit</u>

64. Debtor asserts Claimants were in privity with the plaintiffs in the Sedlar-Sholty Lawsuit based on PFI paying the legal fees for the plaintiffs.  In coming to this conclusion, Debtor provides an incomplete picture of California authorities and glosses over germane facts directly relevant to the MSJ and the bona fides of the Claims.

65. The baseline rule is that "[a] party cannot assert a prior adjudication against another who was not a party or in privity with a party to the prior action." *Lynch v. Glass*, 44 Cal. App. 3d 943, 947 (1975).  However, "collateral estoppel has been applied against nonparties who had a proprietary or financial interest in **and** control of, a prior action." *Id*. at 949 (emphasis added). Debtor's MSJ focuses exclusively upon purported "control" over the Sedlar-Sholty Lawsuit and provides no argument, analysis, or evidence that Claimants had a proprietary or financial interest in that lawsuit.  As detailed in the declarations supporting this opposition, Claimants did not have

---

[5] It is also worth noting that Exhibit 8 to Debtor's motion makes clear that the court in the Sedlar-Sholty Lawsuit granted summary judgment, in part, because "[t]here [were] no appearances by or for any of the Plaintiffs."

a proprietary or financial interest in the Sedlar-Sholty Lawsuit – thus, the baseline rule making collateral estoppel inapplicable to non-parties must govern.

66.     Putting aside the fact that Claimants did not have a proprietary or financial interest in the Sedlar-Sholty Lawsuit for the sake of argument only, Claimants also did not "control" the Sedlar-Sholty Lawsuit. Debtor relies upon the unpublished case *of Thomas v. Hous. Auth. of L.A.*, 2005 U.S. Dist. LEXIS 46427, *47 for the proposition that funding litigation – in and of itself – constitutes "control" over an action. The *Thomas* court's analysis of the issue specifically notes that "[w]hether someone is in privity with the actual parties requires close examination of the circumstances of each case." *Thomas v. Hous. Auth. of L.A*., 2005 U.S. Dist. LEXIS 46427, *47.

67.     In the *Thomas* case, the predicate circumstances were that the non-party did "not allege that any of defendants' actions harmed it directly. Rather, it asserts that defendants' discrimination against the individual plaintiffs caused [it] to divert time and resources to assist the individual plaintiffs in combating the discrimination." *Id*. at *47-48. The court in *Thomas* ultimately found that "[b]ecause [non-party's] claims arise solely from the alleged injury suffered by the individual plaintiffs, and because, through **its** attorney, it controlled the unlawful detainer action, there is a sufficient identity of interest to warrant the application of collateral estoppel …" *Id*. at *49 (emphasis added). These are not the facts or circumstances of the equitable indemnification owed to Claimants asserted in the Claims.

68.     As noted above, Claimants assert a direct harm supporting the Claims – namely the right to equitable indemnification associated with legal fees and costs incurred in connection with the Huh Lawsuit and the Mohr Lawsuit, as well as the prospective judgment plaintiff in the Huh Lawsuit may obtain against Claimants. These claims against Debtor relate to direct harm to Claimants (notably, direct claims that Debtor is not co-liable for because Debtor has been

dismissed as a defendant in the Huh Lawsuit).  Furthermore, plaintiffs in the Sedlar-Sholty Lawsuit separately retained counsel in that case.  As such, and unlike in the *Thomas* case, plaintiffs' counsel was not Claimants' counsel.  Rather, PFI merely funded plaintiffs' legal expenses in the Sedlar-Sholty Lawsuit.  As such, the *Thomas* case is substantively distinguishable from the facts and circumstances of this case.

69.     Debtor points to no case establishing that merely funding litigation, without additional indicia of control, will render a third party to an action to be in privity with parties to that action.  "To establish that Portfolio was in privity because it controlled the UD Action, Plaintiffs would have to show that Portfolio was able to make decisions in the UD Action, such as 'what legal theories and evidence should be advanced, . . . and whether an appeal should be taken from an adverse decision.'" *McAlister v. Essex Prop. Trust*, 504 F. Supp. 2d 903, 912 (C.D. Cal. 2007) <u>citing</u> *Algie v. RCA Global Commc'ns, Inc.*, 891 F. Supp. 839, 852 (S.D.N.Y. 1994).

70.     While PFI may have paid the legal fees for the plaintiffs, Claimants did not retain counsel for plaintiffs in the Sedlar-Sholty Lawsuit.  Further, the Woo Declaration and the Dyo Declaration, clearly state that Claimants had no control over the litigation.  This issue is subject to a factual dispute and cannot be resolved in summary fashion.

71.     Moreover, the only party to fund the legal fees was PFI. Thus, even assuming arguendo the Court finds there is privity, PFI is the only Claimant to fund the litigation so only Claim 20 of PFI would be subject to disallowance based on collateral estoppel.  The Claims of Woo, Dyo and PWM cannot be disallowed on this basis.  Therefore, collateral estoppel / issue preclusion is not applicable to the Claim and the MSJ must be denied accordingly.

///

///

**In the Alternative, the Court Should Stay Ruling on the MSJ Until Conclusion of the Adversary Actions and/or Consolidate the Adversary Actions With the Claim Objections**

72.     Despite seeking to disallow the Claims through a summary proceeding. Debtor heavily leans into the "substantial overlap between the allegations contained in the [Claims] and those contained in the Mohr Lawsuit and the Huh Lawsuit.  The universe of facts for the claim objections, the Mohr Lawsuit and the Huh Lawsuit are likely the same or substantially the same … The Debtor's cross-complaints in the Mohr Lawsuit and the Huh Lawsuit allege that [Claimants] have failed to honor their contractual obligation to defend and their agreement to indemnify Debtor … This summarily demonstrates the overlap between the removed [Adversary Actions], the Debtor's cross-complaints asserted in those lawsuits, and the claim objections against Claimant[s]." Dkt. No. 154, ¶¶ 23-24.

73.     "There is also an issue of fairness here. All matters concerning a creditor's claim should be resolved at one time.  It is clearly inequitable to allow a debtor to object to a claim while concealing a cause of action for a preference." *Laroche Indus. v. Gen. Am. Transp. Corp. (In re Laroche Indus.)*, 284 B.R. 406, 410 (Bankr. D.Del. 2002).  Further, "[a]ll matters concerning a creditor's claim should be resolved at one time." *Shurn v. Gilbert (In re Gulf Coast Glass & Erection Co.)*, 484 B.R. 685, 694 (Bankr. S.D. Texas 2013).

74.     "Pursuant to Bankruptcy Rule 3007 an objection to claim may be joined with an adversary proceeding under Bankruptcy Rule 7001, and the objection to claim becomes an adversary proceeding itself." *Martinez v. Beneficial Texas, Inc. (In re Martinez)*, 2007 Bankr. LEXIS 1260, *4.  "To recover damages, 'an objection to claim coupled with a counterclaim for affirmative relief . . . . must be begun by adversary proceedings under Part VII of the Bankruptcy Rules and not as a mere objection to claim[.]" *In re Lawler*, 106 B.R. 943, 955 (N.D. Tex. 1989)

22

(emphasis added). "The relief specified in Rule 7001 includes proceedings to recover money, determine the validity of a lien, and obtain an injunction.76 Plaintiffs' Complaint seeks all three.77 As noted in Express One, an objection joined with a counterclaim to recover money becomes an adversary proceeding pursuant to Rule 3007.78 Rule 3007 states, '[a] party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding.'" *Blanco v. Bayview Loan Servicing, LLC*, 633 B.R. 714, 730-731 (Bankr. S.D. Tex. 2021).  "A main purpose behind the rule preventing claim splitting is to protect the defendant from being harassed by repetitive actions based on the same claim." *Super Van v. City of San Antonio (In re Super Van)*, 92 F.3d 366, 371 (5th Cir. 1996).

75. According to the Debtors, after Acclivity West's former management engaged in improper activity, which is admitted by the Debtors, Acclivity West's financial condition was such that it could not meet certain simple obligations that were promised to the numerous investors who purchased interests in the Life Settlement Policies.  Indeed, the Declaration of W. Marc Schwartz in Support of Voluntary Petitions and First Day Motions [Docket No. 6] all but admits that the Debtors engaged in unlawful conduct.

76. Given the admitted overlap and interrelated nature of the Claims and the Adversary Actions, it would be inequitable to summarily decide the Claim Objections through the MSJ, yet allow Debtor to pursue its reciprocal claims against Claimants through fulsome litigation of the Adversary Actions.  This is particularly true given the fact that if Claimants prevail in the Adversary Actions and Debtor's cross-complaints filed therein, the dollar amount of the Claims will only increase.  The underlying liability and basis for the amounts claimed owed in the Claims

are identical to the Lawsuits.  Therefore, an adjudication of all claims made by all parties in the Lawsuits should be made before the MSJ is ruled upon.

## **CONCLUSION**

77.     Based on all of the above, Claimants respectfully request that the Court overrule the MSJ and allow the Claims filed by Claimants.  In the alternative, Claimants request this Court to either: (1) stay ruling on the MSJ until conclusion of the Adversary Actions; or (2) convert the Claim Objections to an adversary action.

Dated:  April 11, 2024                    Respectfully submitted,

SHULMAN BASTIAN FRIEDMAN & BUI LLP


By:  */s/ James Bastian*
James C. Bastian, Jr. (admitted *pro hac vice*)
jbastian@shulmanbastian.com
Melissa Davis Lowe (admitted *pro hac vice*)
mlowe@shulmanbastian.com
100 Spectrum Center Dr., Suite 600
Irvine, CA 92618
Telephone: 949-340-3400

-    And –


 DIAMOND McCARTHY LLP


By:  */s/ Christopher D. Johnson*
Allan B. Diamond (SBA 005801800)
adiamond@diamondmccarthy.com
Christopher D. Johnson (SBA 24012913)
Chris.johnson@diamondmccarthy.com
909 Fannin, Suite 3700
Houston, TX 77010
Telephone: 713-333-5100

*Attorneys for Aleksander Dyo and Kelly Woo*

24

## CERTIFICATE OF SERVICE

This is to certify that on April 11, 2024, a true and correct copy of the foregoing instrument was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

 */s/ Christopher D. Johnson*
