**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Case No. 24-90001 (MI) |
| Acclivity Ancillary Services LLC, *et al.,*[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |

**DEBTOR ACCLIVITY WEST LLC'S REPLY TO OPPOSITION TO ACCLIVITY WEST LLC'S MOTION FOR SUMMARY JUDGMENT ON ITS OBJECTIONS TO CLAIM NOS. 16 FILED BY KELLY WOO, 17 FILED BY ALEKSANDER DYO, 18 FILED BY PROFECTUS WEALTH MANAGEMENT CO., AND 20 FILED BY PROFECTUS FINANCIAL & INSURANCE SERVICES, INC.**

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

Acclivity West, LLC ("AW")  and in its capacity as debtor-in-possession ("Debtor"), in the above-captioned jointly administered chapter 11 cases files this reply (this "Reply") to the Opposition [Docket No. 281] (the "Response")[2] to Motion for Summary Judgment [Docket No. 222] ("MSJ")[3] on its Objections to Claim Nos. 16 filed by Kelly Woo ("Woo"), 17 filed by Aleksander Dyo ("Dyo"), 18 filed by Profectus Wealth Management Co. ("Profectus Wealth"), and 20 filed by Profectus Financial & Insurance Services, Inc. ("Profectus Financial" and together

---

[1]     The debtors and debtors in possession these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Acclivity West, LLC (7677) and Acclivity Ancillary Services LLC (0786).  The Debtors' mailing address is: 11200 Broadway Street, Suite 2705, Pearland, Texas 77584.

[2]     In addition to the Response, Woo and Dyo each filed Declarations in support of their Response at Docket Nos. 282 and 283, respectively.

[3]     Capitalized terms used but not defined herein have the meanings assigned to such terms in the MSJ.

with Profectus Wealth, "<u>Profectus</u>", each an "<u>Indemnity Claimant</u>" and collectively with Woo, Dyo, and PWM, the "<u>Indemnity Claimants</u>")[4], and states as follows:

<b><u>PRELIMINARY STATEMENT</u></b>

1.    After a thorough study of the arguments made and authorities cited in the Response two points are clear:  First, Indemnity Claimants have not identified or for certain legitimately raised as required by law one genuine issue of material fact to defeat summary judgment.  Second, by admissions, concessions, and repetitive arguments made and by their own cited authorities **<u>all</u>** of the claims made by Indemnity Claimants, including for attorney's fees paid or to be paid, are exclusively predicated on the doctrine of "equitable indemnity" under California law.  *See C.W. Howe Partners, Inc. v. Mooradian*, 43 Cal. App. 5th 688, 700 (2019) (Equitable indemnity is premised on a joint legal obligation to another for damages and is subject to allocation of fault principles and comparative equitable apportionment of loss.) *see also* Response, ¶¶ 42-47.  There is presently no judgment or court finding co-liability or liability granting Indemnity Claimants the right to equitable indemnity for co-liability, contribution or allocation of liability, and the Indemnity Claimants' claim is not even triggered until (i) their liability is established; and (ii) and the payment is made thereunder.  Presently, the claim for equitable indemnity is no more than an aspiration contained in allegations set out in a draft cross-complaint in the Huh Lawsuit (Exhibit 2 to POCs 16, 17 and 20).  As such, it is wholly contingent on a judicial determination co-liability in the future.  At this time, the entire bundle of claims asserted by Indemnity Claimants meet the

---

[4]    Woo, Dyo, and Profectus self-identified as "Indemnity Claimants."  See Emergency Joint Motion For Entry of An Order Pursuant To Rule 3018(A) of the Federal Rules of Bankruptcy Procedure Temporarily Allowing Claims of Indemnity Claimants For Purposes of Voting To Accept or Reject the Debtors' Plan ("<u>Rule 3018 Motion</u>").

legal criteria for disallowance under Section 502(e)(1)(B), and AW is entitled to the summary judgment requested as a matter of law.

2.  In the Response and in other papers filed with this Court, the Indemnity Claimants make their position for recovery absolutely and unequivocally clear in broad terms that their claims are based on indemnification and contribution from AW, including the amounts for attorneys' fees paid and to be paid, effectively conceding disallowance of the claims under Section 502(e)(1)(B):

> ***This Proof of Claim is based upon liabilities and indemnity rights arising out of Claimant's relationship with the Debtor and which arise out of or are related to three separate filed lawsuits*** described below. Claimant is a financial advisor who entered into a Sales Representative Agreement with the Debtor pursuant to which the Debtor must indemnify and hold Claimant harmless from certain claims, attorneys' fees and costs.
>
> ***Claimant has incurred attorneys' fees and costs, and sustained additional damages as set forth below, for which the Debtor must indemnify claimant.***

POCs attachment, page 1, para 1-2. (emphasis added).

> ***[The Indemnity Claimants] allege that there exists an equitable right of indemnity to them from Acclivity West***, such that Cross-Complainants are entitled to be fully and completely indemnified, or otherwise reimbursed, by Acclivity West for any amounts Cross-Complainants pay by way of settlement, judgment or wise [sic], ***together will all costs and expenses incurred by them in defending against this, or any consolidated or otherwise related, action including, but not limited to, attorneys' fees and costs.***

Huh Draft Cross-Complaint, ¶ 34 (emphasis added).

> The Objecting Parties have ***incurred attorneys' fees and costs, and sustained additional damages***, as a result of the Lawsuits. The Objecting Parties allege that if they are found to be liable under any of the Lawsuits, such liability is solely the result of the negligence, acts, omissions, breach of contract, or other fault of Acclivity West, and that such conduct proximately caused any harm or damages found to have occurred. As such, ***the Objecting Parties allege they are entitled to full and complete indemnification and contribution from Acclivity West***.

3

Confirmation Objection,[5] ¶26 (emphasis added).

> As more fully set forth in the Claims, ***the Indemnity Claimants have incurred attorneys' fees and costs, and sustained additional damages, as a result of the Lawsuits***. The Indemnity Claimants allege that if they are found to be liable under any of the Lawsuits, such liability is solely the result of the negligence, acts, omissions, breach of contract, or other fault of Acclivity West, and that such conduct proximately caused any harm or damages found to have occurred. As such, ***the Indemnity Claimants allege they are entitled to full and complete equitable indemnification and contribution from Acclivity West***.

Rule 3018 Motion, ¶¶ 15 (emphasis added).  The request for attorney's fee paid and to be paid is an integral, inextricable part of the equitable indemnity claim and is contingent upon the determination of litigation that has not yet even been filed.

3. In court, on March 11, 2024, at the very start of the scheduled confirmation hearing, the Indemnity Claimants faced summary denial of their Rule 3018 Motion and disallowance of their claims for voting purpose  under section 502(e)(1)(B).   Facing imminent and complete loss on their 3018 Motion, the Court allowed the Indemnity Claimants to withdraw their Rule 3018 Motion and the Indemnity Claimants withdrew it.  Nothing has changed since March 11.  The Indemnity Claimants' claims were fatally defective as matter of law on March 11 under section 502(e)(1)(B) and they remain so today and should be disallowed, and summary judgment should issue.

4. As a second separate basis for summary judgment, and assuming *arguendo* that Section 502(e)(1)(B) did not apply to disallow the Claims of the Indemnity Claimants, which it does, the Claims should be independently disallowed as a matter of law because they are barred by the doctrine of collateral estoppel / issue preclusion.  In this matter, for purposes of collateral

---

[5] Objection of Creditors Kelly Woo and Aleksander Dyo to Final Approval of Disclosure Statement and Confirmation of Second Amended Joint Combined Chapter 11 Plan and Disclosure Statement of Acclivity Ancillary Services LLC and Its Debtor Affiliates [Docket No. 180] (the "<u>Confirmation Objection</u>").

estoppel, Indemnity Claimants are in privity with the Acclivity plaintiff-investors in the Sedlar-Sholty lawsuit, a lawsuit where AW adjudicated and won on summary judgment in the Sedlar Sholty lawsuit brought against AW by Acclivity plaintiff-investors on the same issues now asserted by the Acclivity plaintiff-investors against the Indemnity Claimants.[6]  With all elements of collateral estoppel satisfied, and the entire legal predicate for AW liability to Indemnity Claimants eliminated, the Claims of the Indemnity Claimants should be entirely disallowed as a matter of law.

## **REPLY**

5.        Before getting into the substance of the Section 502(e)(1)(B) issues, we address the timing of summary judgment.  Summary judgment is necessary and proper now to determine the extent or disallowance of the Indemnity Claimants' claims for plan confirmation purposes. The status of these claims is a threshold matter for plan confirmation.  The Debtors intend to go to confirmation in mid-June and it is not necessary and appropriate in these circumstances to wait for a trial on AW's affirmative claims against the Indemnity Claimants to be consolidated with Indemnity Claimants' claims.  AW's claims against the Indemnity Claimants are not an integral part of the plan and it has always been contemplated that they would to be resolved after plan confirmation.  AW's adversary proceeding against Woo and Dyo which is to be transferred to this Court has not even been docketed in this Court yet.  Further, even assuming consolidation, AW is entitled to partial summary judgment under Rule 56.  *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993) (partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial.); *see also* Fed. R. Civ. P. 56(g); *Zeitler v. Guillen*,

---

[6]        At issue and actually tried in the Sedlar-Sholty Lawsuit were claims of negligence, breach of fiduciary duty, intentional and negligent misrepresentation, and punitive damages.  *See* MSJ Exhibit 10, the Sedlar-Sholty MSJ.

Civil Action No. 4:21-cv-01142, 2023 WL 6882447, 2023 U.S. Dist. LEXIS 186866 at *6-7 (Oct. 18, 2023) (same).  Disallowance of the Indemnity Claimants' claims will be raised in summary judgment or partial summary judgement by AW, so there is no harm to Indemnity Claimants' proceeding prior to a consolidation.

6.      Further and significantly, Indemnity Claimants have abandoned their claim for reimbursement of legal costs for funding the plaintiffs in the Sedlar-Sholty Lawsuit – "Legal costs paid on behalf of clients related to Sedlar-Sholty Action - $102,556.54 (plus future legal costs, amount unknown/ongoing) (the "Abandoned Portion").  *See* POC No. 20 attachment, p. 2.  AW objected to, and moved for summary judgment on, Claims 16, 17, 18, and 20 in their entirety.  See MSJ.  The Abandoned Portion of the claim is no longer in dispute because the Indemnity Claimants did not contest it in their Response.  Under Rule 56, a party's "failure to pursue" or defend a claim in response to a dispositive motion constitutes an abandonment of that claim. *See, e.g., Terry Black's Barbecue, LLC v. State Auto Mut. Ins. Co.*, 22 F4th 450, 459 (5th Cir. 2022) ("A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims."); *In re Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (plaintiff abandoned claim in failing to address it in opposition to the motions to dismiss and for summary judgment).  It is interesting that the Indemnity Claimants have intentionally gone dark and silent on this part of their claim which is the triggering event for privity related to the issue preclusion/collateral estoppel arguments discussed in the MSJ and below.  In any event, the application of the "American Rule" as set forth in the MSJ is sufficient to fully disallow this portion of the claims.

7.      AW should prevail on the balance of the MSJ because the Indemnity Claimant's claim must be disallowed (i) under Section 502(e)(1)(B), and (ii) separately due to issue

preclusion/collateral estoppel as set forth in the MSJ and as further addressed below in reply to the Response.

## I.    Section 502(e)(1)(B)

8.        Assuming *arguendo*, without agreeing, that AW could be found to be co-liable with the Indemnity Claimants to Huh and to the other Sedlar-Sholty plaintiffs as alleged in the Indemnity Claimants' proofs of claim, which are based exclusively on the entitlement to equitable indemnity/contribution, those claim should be disallowed as a matter of law in their entirety under Section 502(e)(1)(b).

### A.    There Is No Legitimate Material Fact Issue That Needs To Be Determined As To Whether Any Damages Were Caused By AW That Bars Summary Judgment Under 502(e)(1)(B)

9.        Summary judgment is proper if the moving party demonstrates the absence of a genuine issue of material of fact which makes movement entitled to summary judgment as a matter of law.  *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  If the movant produces summary judgment evidence to show there is no genuine issue of material fact, the non-movant must then identify summary judgment evidence to rebut the movant and show that the summary judgment evidence establishes a genuine issue of material fact for trial. *Id.* (citing *Celotex,* 477 U. S. 317, 321-23 (1966)).  The summary judgment evidence produced by AW in the MSJ, see Exhibits 1 to 16 at Docket No. 222, shows that there is no genuine issue of material fact that bars summary judgment under Section 502(e)(1)(b), and judgment should issue as a matter of law.

10.       Indemnity Claimants fail to show that any genuine issue of material fact is in dispute.  Unlike the standard afforded a plaintiff, for surviving a motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure, to defeat movants' summary judgment motion, as a matter of law, the non-movant – the Indemnity Claimants – must ***properly identify*** summary judgment

7

evidence to show the existence of a genuine issue of material fact.  Mere allegations made in the Response are not sufficient and fail as a matter of law.  Mere conclusory allegations are not competent summary judgment evidence, and such allegations, as a matter of law fail to defeat a summary judgment motion. *Flowers*, 79 F.4th at 452; *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012); *Eason, 73 F.3d at 1325.* 3.

11.     "In order to defeat a properly supported motion for summary judgment, the nonmoving party must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a "fair-minded jury" that it is entitled to a verdict in its favor. At this point, the mere allegations in the complaint are not sufficient; the non-movant is required to identify specific evidence in the record, and to articulate the "precise manner" in which that evidence supported their claim." *ContiCommodity Services, Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995).  As to AW's MSJ, the Indemnity Claimants fail on this critical point under Fifth Circuit law.

12.     Indemnity Claimants merely allege in the Response that "there exists a factual dispute as to whether any damages suffered by the Creditor-Investors were caused by the actions of Acclivity West and specifically, the product it sold, or by the actions of the Claimants"; and the Indemnity Claimants argue that this is a factual issue that requires additional fact-finding, a fulsome trial, and an adjudication of the underlying Adversary Actions."  Response, ¶ 46.  The proposition is wrong, and it is not legitimately raised under Fifth Circuit law.

13.     At the status conference on April 4, 2024, the Court and Indemnity Claimant's counsel had a colloquy with the court regarding outstanding factual disputes:

> THE COURT: Have you filed a motion? Is it 54(g)? I'm looking it up right now to be sure I've got the right number. 56(g), maybe? Let's see. No, 56(d). Have you filed a 56(d) motion?

MR. O'DEA: We have not, Your Honor. It's our intention to file that motion concurrently with our response to the MSJ, indicating the fact that we have discovery that needs to be conducted before Your Honor can rule on the motion for summary judgment.

THE COURT: So I'm going to be interested in what that is, because, as I understood your clients' claims and their proof of claim, they are all based on indemnity one way or the other or on co-liability one way or the other. And if that's the case, I'm not sure that it matters if they are unfunded and under 502. So I'm not going to open discovery into merits if the merits discovery wouldn't yield an allowed claim because of 502(e).

So I need you, when you file your 54(g) motion, to explain to me why the discovery you want will affect the ultimate outcome of the summary judgment, which I haven't read yet. So I want everybody to know I haven't read that yet, but you're certainly free to do that. So your response date comes in about ten days or so, right?

MR. O'DEA: Correct, Your Honor. And I believe it's the 11th.

Transcript 4/3/24, 12:1-25.

14.    Despite this long colloquy between the Court and the Indemnity Claimants' counsel, no Rule 56(d) motion was filed.   Instead, the Indemnity Claimants merely make allegations in the Response that are not supported by the declarations or any summary judgement evidence.

15.    There is simply no legitimate showing of the need for any fact-finding, litigation, or trial to decide whether any damages to the plaintiff-investors were caused by the actions of AW or by actions of the Indemnity Claimants.  The Indemnity Claimants have not legitimately raised any material fact dispute under Rule 56 as a matter of law.

16.    Moreover, the mere allegation made that a purported factual dispute exists as to whether the damages to the plaintiff-investors were caused by AW,[7] or by Indemnity Claimants,

---

[7]    This constitutes a challenge under Rule 56(c)(2) to the assertion by the Indemnity Claimants that a factual dispute exists.

9

stands as a bar to summary judgment is facially absurd proposition – ***it doesn't matter one way or the other***.  Under their exclusive theory of recovery – equitable indemnity – on one hand, if AW is determined to be co-liable with Indemnity Claimants then section 506(e)(1)(B) applies and such claims are disallowed.  On the other hand, if AW is found not to be co-liable, then the Indemnity Claimants have no claims against AW for equitable indemnity and the Indemnity Claimant's claims again fail. Under any scenario, Indemnity Claimants claims should be disallowed as a matter of law under 502(e)(1)(B).

      **B.**      **Section 502(e)(1)(B) Applies To Indemnity Claims For Attorney Fees Paid And To Be Paid – The Indemnity Claimants Have Admitted the Attorneys Fees Are Part of the Indemnity Claims**

17.      Despite making admissions that the attorney's fees are part of the equitable indemnity claim in the various papers the Indemnity Claimants have filed with this Court, as noted in paragraphs 2 above, the Indemnity Claimants now argue that Section 502(e)(1)(B) is not applicable to their claim for attorney's fees. Response, ¶¶ 49-57.  As demonstrated, this is in direct contradiction to the admissions[8] made and positions taken by the Indemnity Claimants in their sworn proofs of claim, Rule 3018 Motion, and Objection to Confirmation – every paper they have filed in this case up to the Response.  The only basis for recovery, including attorneys' fees paid or unpaid, is the assertion of equitable indemnity under California law.  The Indemnity Claimants cannot take back the admissions and the Indemnity Claimants have not identified any other basis, other than equitable indemnity, as a basis for recovery.

---

[8]    "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. . . . [I]t has the effect of withdrawing a fact from contention." *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001); *see also Giddens v. Cmty. Educ. Ctrs., Inc.*, 540 Fed. Appx. 381, 390 n.3 (5th Cir. 2013) (factual assertions in pleadings are considered to be judicial admissions conclusively binding on the party who made them).  A judicial admission is an intentional waiver, "releasing the opponent from proof of fact." *Id*.  In contrast, an evidentiary admission is "merely a statement of assertion or concession made for some independent purpose."  *Id*. at 476–77 (quoting *McNamara v. Miller*, 269 F.2d 511, 515 (D.C. Cir. 1959)).  A judicial admission is binding absent leave to withdraw it. *Id*. at 477.

18.     The Indemnity Claimants made admissions that attorney fees ***are included*** as an integral inextricable part of their claimed right to equitable indemnity.  The Indemnity Claimants are bound by such admissions.  Their judicial admissions are found in their proofs of claim ("POCs") filed in this case.  Proofs of Claim Nos. 16, 17 18, 20.  Indeed, in the first two paragraphs of the POCs attachments' first page, the Indemnity Claimants admit that the attorneys' fees and costs are part of what they allege AW must indemnify them for.

> ***This Proof of Claim is based upon liabilities and indemnity rights arising out of Claimant's relationship with the Debtor and which arise out of or are related to three separate filed lawsuits*** described below. Claimant is a financial advisor who entered into a Sales Representative Agreement with the Debtor pursuant to which the Debtor must indemnify and hold Claimant harmless from certain claims, attorneys' fees and costs.
>
> ***Claimant has incurred attorneys' fees and costs, and sustained additional damages as set forth below, for which the Debtor must indemnify claimant.***

POCs attachment, page 1, para 1-2. (emphasis added).

19.     The sworn POCs also incorporate the Indemnity Claimants' unfiled draft cross-complaint in the Huh Action, "which gives rise to indemnity claims in favor of Claimant…".

> Complaint filed LASC – Central District, Case No. 23STCV0156. Attached hereto as Exhibit "1" is the Complaint filed in the Huh Action. Claimant and certain of his affiliates were named as defendants in the Huh Action, which gives rise to indemnity claims in favor of Claimant to the extent Claimant ***is required to incur legal fees and costs and pay any sums on account of claims asserted in the Huh Action, and additional claims against the Debtor as described in a draft cross complaint prepared by Claimant's counsel in the Huh Action*** but which has not yet been filed due to a stay imposed on the Huh Action due to a bankruptcy filing by one of the other defendants and the Debtor's instant bankruptcy filing. Attached hereto as Exhibit "2" is the draft cross complaint against the Debtor which sets forth additional claims against the Debtor, with damages to be established according to proof.

POCs attachment, page 1, para 3.

11

20.    In the Huh draft cross-complaint, that is incorporated into the POCs, the Indemnity Claimants state: "***[The Indemnity Claimants] allege that there exists an equitable right of indemnity to them from Acclivity West***, such that Cross-Complainants are entitled to be fully and completely indemnified, or otherwise reimbursed, by Acclivity West for any amounts Cross-Complainants pay by way of settlement, judgment or wise, ***together will all costs and expenses incurred by them in defending against this, or any consolidated or otherwise related, action including, but not limited to, attorneys' fees and costs.***"   Huh Draft Cross-Complaint, ¶ 34 (emphasis added).

21.    The predicate for the Indemnity Claimants' claims is equitable indemnity, which includes attorney fees and costs — as admitted in their POCs.  Pursuant to Fifth Circuit law, the Indemnity Claimants are bound by such admissions. *Martinez*, 244 F.3d at 476; *Giddens*, 540 Fed. Appx. at 390 n.3.  They cannot now divorce attorney fees from the remainder of their equitable indemnity claims.  Here, as a matter of law, and without regard to how this issue was resolved in other cases, pursuant to Indemnity Claimants' admissions, equitable indemnity includes attorney fees and costs.

**C.    Disallowance of Attorney's Fees Paid and Unpaid is Appropriate Under Section 502(e)(1)(B) Because Here the Attorney's Fees Are an Inextricable Part of the Equitable Indemnity Claim**

22.    Section 502(e)(1)(B) co-liability applies to attorneys' fees when the attorney's fees are part of the indemnification claim.  The Indemnity Claimants have conceded and admitted that their attorney fees and costs are part of what they allege Debtor must indemnify them for.  The cases cited by the Indemnity Claimants that hold that attorney's fees are outside the scope of Section 502(e)(1)(B) are factually distinguishable.   In the cases cited by the Indemnity Claimants

12

the basis for recovering attorney's fees is not based on an equitable indemnity claim under California law, but rather from separate contractual basis.

23.     As Senior District Judge Milton Pollack of the Southern District of New York District Court put it: "Appellant's attempt to segregate these cost-related claims from the underlying indemnity claims on the basis of co-liability ignores the fact that they are simply different facets of the same unified whole." *In re Drexel Burnham Lambert Group, Inc.*, 146 B.R. 92, 97 (Bankr. S.D.N.Y. 1992).  All of it should be under Section 502(e)(1)(B), and all claims disallowed under that subsection.  *See id.; see also In re Wedtech Corp.*, 85 B.R. 285 (Bankr. S.D.N.Y. 1988).   The reasoning of the *Drexel Burnham* court, as well as *In re Fuel Barons*, 488 B.R. 783 (Bankr. N.D. Ga. 2013) and *In re Wedtech*, 85 B.R. 285 (Bankr. S.D.N.Y. 1988), both cited in the MSJ, are applicable to this case and should be followed by this Court. Here, the Indemnity Claimants have repeatedly admitted that the inclusion of attorney's fees paid and unpaid are part of the equitable indemnity claim.

24.     Indemnity Claimants rely on *In re RNI Wind Down Corp*. ("*RNI*"), but *RNI* is easily distinguishable from the present case.  *In re RNI Wind Down Corp*., 369 B.R. 174 (Bankr. D. Del. 2007).  In *RNI*, the right to payment found to be not contingent was the right to the ***advancement of costs of defense***, and not the right to contribution or indemnity for amounts ultimately paid to a third party. *Id*. at 191.  In *RNI*, the right to advancement was a then-existing liability, a right under the certificate of incorporation, bylaws and Delaware law, subject only to uncertainty at the time as to just how much the defense costs would turn out to be.  *Id*. at 183.  Although the *RNI* estate might thereafter have a separate right in the future to establish a separate cause of action against the corporate affiliates to secure repayment of amounts advanced, that separate right didn't affect his right to advancement at the time.

13

25.     "While a determination as to whether a corporate officer is entitled to indemnification must await the outcome of the underlying controversy, advancement, by contrast, is a right whereby a potential indemnitee has the ability to force the company to pay his litigation expenses as they are incurred regardless of whether he will ultimately be entitled to indemnification." *Id*. at 186 (internal quotations and punctuation omitted).

26.     In fact, the *RNI* court stated that "the claims [in *RNI*] are fundamentally different from claims for contribution … where the liability itself does not arise unless and until the payment is made to the third party." *Id*. at 184.  Moreover, ***the RNI court had previously entered an order authorizing and approving the advancement of defense costs*** to certain present and former employees, including the party at issue claiming attorney fees, and such advancements of attorney fees had been made. *Id*. at 187.   In our situation, liability has not been determined therefore RNI does not apply.

27.     Similarly, the Indemnity Claimants rely on *Vectrix Bus. Solutions*, however, in *Vectrix*, the Court determined that the attorney's fees are not disallowed under Section 502(e)(1)(B) because the attorney's fees are not predicated on co-liability.  *Vectrix Bus. Solutions*, 2005 Bankr. LEXIS at *1-2, 4-5.  Importantly, this is distinguishable from the present case because the equitable indemnification claim includes the claim for attorney's fees and the equitable indemnification claims requires a threshold determination of co-liability which has not occurred.

28.     Indemnity Claimants also cite *Chemtura* for the proposition that attorney's fees are not subject to disallowance under Section 502(e)(1)(B); however, *Chemtura* is distinguishable because in *Chemtura* the Debtor's lawyer conceded that the Debtor was not co-liable for the attorney's fees. *In re Chemtura Corp.*, 436 B.R. 286, 296 (Bankr. S.D.N.Y. 2010).   In the present case, the only predicate for the claim for attorneys' fees is equitable indemnity which requires the

Indemnity Claimants to get a finding of co-liability.   If there is no finding of co-liability then they do not have any claim against the Debtors, for attorney's fees or any other amounts.   The Indemnity Claimants have no other theory for recovery of attorney's fees. *In re Lyondell Chem. Co.*, 442 B.R. 236, 255 (Bankr. S.D.N.Y. 2011) ("If the Debtors and [the claimant] are not jointly and severally liable, then [the claimant] would have not a claim against the Debtors in the first place[.]").   Therefore, if co-liability exists then the claims are disallowed under Section 502(e)(1)(B); if co-liability does not exist, then there is no liability and no claim.  *Id*.

> **D.** **An Equitable Indemnity Action Is Separate and Distinct From the Underlying Claim and the Contingency Contemplated By Section 502(e)(1)(B) Is To Both Payment and Liability on Such Separate and Distinct Action**

29.     The Indemnity Claimants argue that a court can determine equitable indemnification liability separate and apart from the underlying claim.   Any equitable indemnification required of Debtors is contingent on AW being found co-liable for the underlying claims.

30.     The Indemnity Claimants further argue that "despite Debtor's contention that its liability is precluded by the Lawsuits, a defendant's equitable indemnity action against the proposed indemnitor is separate and distinct from the underlying action as a claim for equitable indemnity does not come into existence until the indemnitee has suffered loss through payment." Response, ¶ 47, citing *Crouse v. Brobeck, Phleger, & Harrison*, 67 Cal. App. 4th 1509, 1541-43 (1998).

31.     *Crouse* concerned, in relevant part, an independent claim for equitable indemnity made after the underlying lawsuit had been dismissed by the trial court on statute of limitations grounds.  *Crouse*, 67 Cal. App. 4th at 1541-43.  The *Crouse* court went on the rule that a tort defendant's equitable indemnity claim does not arise for statute of limitations purposes until the defendant pays a judgment or settlement for which he is entitled to indemnity. *Id*. at 1541.  The

Crouse court held that a tort defendant retains the right to seek equitable indemnity from another tortfeasor even if the plaintiff's action against a cross-defendant is barred by limitations. *Id.* at 1543.

32.     The Indemnity Claimants are using the payment of attorney's fees as a trigger for the equitable indemnity claim, making them inextricably part of the equitable indemnity claim. However, under federal bankruptcy law, the payment of attorney's fees does not make it non-contingent under Section 502(e)(1)(B) analysis because the law is clear that the contingency contemplated by section 502(e)(1)(B) relates to ***both payment and liability***.

33.     The right to indemnity flows from payment of a joint legal obligation on another's behalf. *Expressions at Rancho Niguel Assn. v. Ahmanson Developments, Inc.,* 86 Cal. App. 4th 1135, 1139 (2001). The elements of a cause of action for indemnity are (1) a showing of *fault* on the part of the indemnitor, and (2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible. *Id.* Equitable indemnity principles govern the allocation of loss or damages among multiple tortfeasors whose liability for the underlying injury is joint and several. Such principles are designed, generally, to do equity among defendants who are legally responsible for an indivisible injury by providing a basis on which liability for damage will be borne by each joint tortfeasor. *Id.* at 1139-40.

34.     As the Indemnity Claimants themselves recognize, equitable indemnity "is premised on a joint legal obligation to another for damages." *See C.W. Howe Partners, Inc.*, 43 Cal. App. 5th at 700; Response, ¶ 44. Where the parties are joint obligors, "[t]he elements of a cause of action for [equitable] indemnity are (1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is … equitably responsible.'" *Id.* (internal citations omitted).

35.     However, "equitable indemnity is only available among tortfeasors who are jointly and severally liable for the plaintiff's injury." *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp.*, 143 Cal. App. 4th 1036, 1040 (2006) *citing Leko v. Cornerstone Bldg. Inspection Service*, 86 Cal. App. 4th 1109, 1115 (2001). "A tortfeasor is one who is liable for damages to the injured plaintiff. If the alleged tortfeasor is not liable at all no tenable claim can be made for [implied indemnity]." *Watson v. Dep't of Transportation*, 68 Cal. App. 4th 885, 892, 80 Cal. Rptr. 2d 594, 599 (1998) (emphasis added). Because AW prevailed against the Sedlar-Sholty plaintiffs, including Huh, on summary judgment, and no judgment has otherwise been rendered against AW, AW is not a tortfeasor who is jointly and severally liable to the same plaintiffs the Indemnity Claimants may be liable to. Similarly, a claim for equitable contribution fails for the same reason. As to equitable contribution, this doctrine reflects "the right to recover from a co-obligor who shares a liability with the party seeking contribution." *Certain Underwriters at Lloyds, London v. Arch Specialty Ins. Co.*, 246 Cal. App. 4th 418, 428 (2016) *citing Underwriters of Interest Subscribing to Policy Number A15274001 v. ProBuilders Specialty Ins. Co.*, 241 Cal. App. 4th 721, 728 (2015). For the reasons set forth above, equitable contribution does not apply.

36.     Further, the contingency contemplated by Section 502(e)(1)(B) relates to both payment and liability. Therefore, a claimant's claim is contingent until (i) liability is established and (ii) the co-debtor (co-obligor) has paid the creditor. *In re Lyondell Chem. Co.*, 442 B.R. 236, 249 (Bankr. S.D.N.Y. 2011) citing *In re APCO Liquidating Trust*, 370 B.R. 625, 636 (Bankr. D. Del. 2007); *see also Crouse*, 67 Cal. App. 4th at 1541-43. *Lyndell* was cited by the Indemnity Claimants, but they overlooked this critical ruling by the court. Here, the only payment that has occurred is with respect to the attorney's fees, but there has not yet been a liability determination,

17

accordingly, as against AW, the entire claim asserted by the Indemnity Claimants, including the portion of the claim for attorneys' fees that the Indemnity Claimants have paid, are contingent.

37.     Nothing said in the Response can avoid the conclusion that the claims of the Indemnity Claimants, including the claims for attorney's fee paid and unpaid, should be disallowed in their entirety under Section 502(e)(1)(B).

## II.     Issue Preclusion / Collateral Estoppel

38.     The Indemnity Claimants assert equitable indemnity/contribution based on claims asserted against them by the Sedlar-Sholty plaintiffs and Huh.   But because AW was found not liable to these parties, Acclivity is not a joint obligor with the Indemnity Claimants — or even a potential joint obligor.  Acclivity therefore cannot be liable for equitable indemnity or contribution to the Indemnity Claimants.

### A.     Funding of the Sedlar-Sholty Lawsuit establishes privity

39.     As an initial matter, under applicable California law, the Indemnity Claimants are in privity with the Sedlar-Sholty Lawsuit Plaintiffs.  Incredibly, while the Indemnity Claimants admit that they funded $102,556.54 the Sedlar-Sholty Lawsuit, they contest that such funding satisfies the privity requirement for collateral estoppel under California law.  As a matter of California law, if a non-party to the prior litigation significantly financed the prior litigation, this amounts to control of the prior litigation and privity exists.  *Thomas v. Housing Auth. of Los Angeles*, Case No. CV 04-6970, 2005 U.S. Dist LEXIS 46427 (C.D. Cal. June 2, 2005) (applying California law to find privity where non-party to prior litigation funded the attorneys for the prior litigation).  In contrast, a mere miniscule contribution (0.2%) to the attorney fees in the prior litigation would not result in privity, because making such a miniscule contribution would not

18

amount to controlling the prior litigation. *Bates v. Jones*, 1996 U.S. Dist LEXIS 20998 (N.D. Cal May 30, 1996) (applying California law, to privity in Res Judicata context).

40.     Here, Profectus spent, a significant (non-miniscule) sum $102,556.54 funding the Sedlar-Sholty Lawsuit. *See* Claim No. 20 ("Legal costs paid on behalf of clients related to Sedlar-Sholty Action - $102,556.54 (plus future legal costs, amount unknown/ongoing)"); *see* also Exhibit 12, Dyo Depo. 71:21-72:24 (Profectus Financial paid the attorney fees to fund plaintiff investors to file a lawsuit to pursue Acclivity in the Sedlar-Sholty, specifically funding attorney's fees for Dyo's clients to sue Acclivity.). While only one of the Profectus entities actually paid the Sedlar-Sholty legal fees, Dyo and Woo own and control both Profectus entities. *See* MSJ Exhibit 6 at para. 11 ("At all relevant times herein, Woo and Dyo were and are the principals of PWM and PFI, which are financial advisory firms.").

41.     This level of funding of the Sedlar-Sholty Lawsuit attorney fees, standing alone, is sufficient to establish privity with regard to issue preclusion. *Thomas*, 2005 U.S. Dist LEXIS 46427 (applying California law to find privity where non-party to prior litigation funded the attorneys for the prior litigation); *see also Bates*, 1996 U.S. Dist LEXIS 20998 (a mere miniscule contribution (0.2%) to the attorney fees in the prior litigation would not result in privity).

**B.     Issues Already Determined By the Sedlar-Sholty Lawsuit MSJ Are Precluded**

42.     As an initial matter, any indemnification that might be owed by AW to the Indemnity Claimants in any of these lawsuits is based on the alleged wrongdoing of AW. The elements of a cause of action for indemnity are: (1) a showing of *fault* on the part of the indemnitor, and (2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible. *Expressions at Rancho Niguel Assn. v. Ahmanson Developments, Inc.*, 86 Cal. App. 4th 1135, 1139 (2001). Without fault on the part of AW, there can be no equitable indemnification.

19

AW has already been found not liable to investors – not at fault for the alleged wrongdoing in the Sedlar-Sholty Lawsuit.

43.     The issues precluded by issue preclusion are those issues that have already been tried and determined by summary judgment in the Sedlar-Sholty Lawsuit. *See* Sedlar-Sholtey MSJ and Order, MSJ Exhibits 8, 10.  These issues cannot be re-tried to establish any liability against AW.

44.     The issues that were actually litigated and decided in the Sedlar-Sholty MSJ are as follows:  (1) for the negligence claim: AW owed no duty of care to plaintiffs and did not breach any such duty; (2) for the breach of fiduciary duty claim:  AW had no fiduciary relationship, breached no fiduciary duties, ***and caused no damages to plaintiffs***;  (3) for the intentional and negligent misrepresentation claim:  AW made no actionable misrepresentations, plaintiffs did not rely on alleged misrepresentations by AW, and did not suffer damages as a result of alleged misrepresentations by AW;  and (4) for the punitive damages claim: oppression, fraud, or malice by an officer, director, or managing agent of AW.  *See* Sedlar-Sholty MSJ, MSJ Exhibit 10, pp. 4-7.  AW cannot be found liable as to these issues.   Such issues have been determined by summary judgment and cannot be re-litigated to establish any liability against AW. *People v. Strong*, 13 Cal. 5th 698 (Cal. Sup. Ct. 2022); *People v. Curiel*, 15 Cal. 5th 433 (Cal. Sup. Ct. 2023).  To the extent this Court were to find that there are any issues that have not yet been determined by summary judgment, a partial summary judgment as to the issues already determined by summary judgment order is appropriate. *Calpetco 1981*, 989 F.2d at 1415; *Zeitler*, 2023 WL 6882447, 2023 U.S. Dist. LEXIS 186866 at *6-7.

**CONCLUSION**

As to AW's first basis for summary judgment – total disallowance of the Claims under Section 502(e)(1)(B) – summary judgment should issue, and the Clams should be disallowed in

their entirety.     As to AW's second separate basis for summary judgment – issue preclusion/collateral estoppel – summary judgment should issue barring Indemnity Claimants from seeking any new determination of AW wrongdoing, liability or co-liability for the issues tried and won by AW in Sedlar Sholty, as discussed above.

Dated:  April 18, 2024

**PARKINS & RUBIO LLP**

*/s/ Lenard M. Parkins*
Lenard M. Parkins
TX Bar No. 15518200
Charles M. Rubio
TX Bar No. 24083768
700 Milam Street, Suite 1300
Houston, TX 77002
Phone: (713) 715-1660
Fax:    (713) 715-1669
Email: lparkins@parkinsrubio.com
        crubio@parkinsrubio.com

***Counsel to the Debtors***